UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SMITH ROOFING AND SIDING, L.L.C., an Idaho limited liability company, <br><br>       Plaintiff, <br><br> v. <br><br> GLEN SMITH, an individual, and SMITH ROOFING LLC, an Idaho limited liability company, <br><br>       Defendants. | Case No. 4:23-cv-00310-DCN <br><br> **MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Before the Court is Plaintiff Smith Roofing and Siding, L.L.C.'s ("Plaintiff") Motion for Default Judgment.[1] Dkt. 11. For the reasons set forth below, the Motion for Default Judgment is **GRANTED**.

## II. BACKGROUND

### A. Factual Background[2]

Plaintiff is the latest iteration of a family roofing business in operation for over 52-years using the name "Smith Roofing." Plaintiff provides residential, commercial, and new

---

[1] The Court finds oral argument is unnecessary both because Plaintiff has adequately presented the facts and legal argument supporting its Motion for Default Judgment, and because Defendants have failed to formally appear or participate in this matter. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B).

[2] The following facts are from Plaintiff's Complaint. Dkt. 1. When examining the merits of a default judgment, the Court takes the well-pleaded allegations in the Complaint as true. *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002) (citation omitted).

construction services in Southeast Idaho and Western Wyoming. Plaintiff has become widely known in the roofing trade, and specifically in the Southeast Idaho and Western Wyoming communities, with an excellent reputation for quality of workmanship and customer service. From the early 1970s through the present, Plaintiff and its predecessor have always operated using the tradenames "Smith Roofing" and "Smith Roofing Company." Originally operated as a sole proprietorship under the name "Smith Roofing," Plaintiff registered the assumed business name "Smith Roofing Company" in 1997, and then organized into a limited liability company in 2021. Further, since at least 2015, but potentially as early as 2008, Plaintiff has utilized a trademark consisting of a stylized roofline drawing behind the words "Smith Roofing."

On or about December 22, 2021—after Plaintiff had been in business for more than 50-years—Defendants Glen Smith and Smith Roofing, LLC (collectively, "Defendants") began doing business as "Smith Roofing," and organized Smith Roofing, LLC, as a limited liability company with the Idaho Secretary of State.[3] In addition to using the same trade name as Plaintiff, Defendants adopted a confusingly similar mark consisting of a stylized roofline drawing behind the words, "Smith Roofing." Defendants also established multiple separate internet sites, including www.smithroofs.com, www.smithroofs.net, and www.smithroofingid.com, each of which rely upon Plaintiff's trade name "Smith Roofing."

Defendants, operating as "Smith Roofing," provide residential, commercial, and

---

[3] Plaintiff believes Defendant Glen Smith is the sole member of Smith Roofing, LLC.  Dkt. 1, ¶ 16.

new construction roofing services in Southeast Idaho and Western Wyoming, and thus offer the same services, in the same communities, as Plaintiff. Defendants create market confusion by using an identical name to Plaintiff's assumed business name, and by displaying a similar mark to Plaintiff's trademark on their signs and marketing materials. Plaintiff alleges Defendants have actively and intentionally misled customers attempting to reach Plaintiff by allowing such customers to believe that the Defendants are the same company as Plaintiff. In fact, actual marketplace confusion has resulted in at least one check owed to Plaintiff, in the total sum of $83,000.00, to be sent to Defendants. Plaintiff has also received telephone calls from customers complaining about services performed and/or not performed in a timely manner by Defendants, and thus has actual knowledge of the reputational injury Defendants have caused. Through intentionally using an identical trade name and confusingly similar mark, Defendants have diluted Plaintiff's reputation and good will.

### B. Procedural Background

On June 15, 2023, Plaintiff demanded that Defendants cease and desist use of the Smith Roofing trademark. When Defendants refused, Plaintiff filed the instant suit on June 30, 2023. Dkt. 1. Plaintiff brings six claims against Defendants: (1) Trademark Infringement under Section 43 of the Lanham Act, 15 U.S.C. § 1125(a); (2) Common Law Trademark Infringement; (3) Unfair Competition; (4) Unfair Competition under Idaho Code § 48-603; (5) Unjust Enrichment; and (6) Tortious Interference with Prospective Economic Advantage. *Id*.

Defendants were served with Plaintiff's Complaint on July 11, 2023. Dkt. 4. After their response deadline had passed, Defendants appeared through an unlicensed third party on September 5, 2023, and requested an extension of time to answer Plaintiff's Complaint. Dkt. 5. The Court gave Defendants an additional thirty days to file an Answer. Dkt. 7. The Court also ordered Defendant Glen Smith to appear himself or to retain an attorney, and Defendant Smith Roofing, LLC to appear with an attorney.[4] *Id*. Defendants neither appeared nor answered Plaintiff's Complaint.

On November 1, 2023, Plaintiff applied for entry of default against Defendants. Dkt. 8. A Clerk's Entry of Default was entered on November 15, 2023. Dkt. 10. Since the Clerk's Entry of Default, Defendants have not appeared, moved to set aside the Clerk's Entry of Default, nor otherwise participated in this case. Plaintiff filed the instant Motion for Default Judgment on January 17, 2024. Dkt. 11. Defendants did not respond to Plaintiff's Motion for Default Judgment, and the deadline for doing so has expired.

### III. LEGAL STANDARD

When a party against whom a judgment for affirmative relief is sought fails to plead or otherwise defend, the plaintiff may apply to the court for a default judgment. Fed. R. Civ. P. 55. Plaintiff seeks entry of default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2). Specifically, Plaintiff requests a permanent injunction enjoining Defendants from continuing to conduct business under the name Smith Roofing, and from

---

[4] The Court ordered Defendant Smith Roofing, LLC to appear with an attorney because corporations, partnerships, and limited liability companies—even solely owned limited liability companies—may appear in federal court only through a licensed attorney. *Lattanzio v. COMTA*, 481 F.3d 137, 140 (2d Cir. 2007) (explaining a layperson may not represent any separate legal entity pursuant to 28 U.S.C. § 1654).

utilizing any marks like those used by Smith Roofing and Siding, L.L.C. Dkt. 1, at 9.

Whether to enter a default judgment is a matter within the court's discretion. *Aldape v. Aldape*, 616 F.2d 1089, 1092 (9th Cir. 1980). The court may consider a variety of factors in the exercise of such discretion, including: (1) the possibility of prejudice to plaintiff; (2) the merits of plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning the material facts; (6) whether defendant's default was the product of excusable neglect; and (7) the strong policy favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). "In applying this discretionary standard, default judgments are more often granted than denied." *PepsiCo v. Triunfo-Mex, Inc.*, 189 F.R.D. 431, 432 (C.D. Cal. 1999).

## IV. ANALYSIS

### A. Procedural Requirements

As a threshold matter, the Court finds Plaintiff has met the procedural requirements of Federal Rule of Civil Procedure 54 and 55. On July 11, 2023, Defendants were served with the Complaint and Summons. Dkt. 4. Plaintiff's counsel filed a declaration affirming that Defendants are not minors or incompetent persons, and are not persons protected by the Servicemembers Civil Relief Act. Dkt. 8, ¶ 4. Every filing in this case has also been mailed to Defendants at the address Defendants provided to the Court.[5]

Pursuant to Federal Rule of Civil Procedure 55(a), a Clerk's Entry of Default was

---

[5] Defendants included a contact address in their Motion for Extension of Time to File Answer. Dkt. 5. The Court's Electronic Case Filing system reflects that every subsequent filing in this case was mailed to Defendants at the contact address they provided.

entered on November 15, 2023. Dkt. 10. Plaintiff filed its Motion for Default Judgment on January 17, 2024. Dkt. 11. Although Plaintiff's Motion for Default Judgment was mailed to Defendants the same day, Defendants have failed to ever respond. Finally, in compliance with Federal Rule of Civil Procedure 54(c), the relief Plaintiff requests in its Motion for Default Judgment—a permanent injunction, attorney fees, and costs—does not differ in kind or exceed in amount the relief requested in the Complaint. *Compare* Dkt. 1 *with* Dkt. 11. Accordingly, Plaintiff has met the procedural requirements for obtaining a default judgment.

**B. Jurisdiction[6]**

"To avoid entering a default judgment that can later be successfully attacked as void, a court should determine whether it has the power, i.e., the jurisdiction, to enter the judgment in the first place." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). Thus, before addressing the merits of Plaintiff's Motion for Default, the Court must first determine whether it has subject matter jurisdiction.

Pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1121, the Court has federal question jurisdiction because Plaintiff's primary claim is for trademark infringement under the Lanham Act, 15 U.S.C. § 1111 *et seq*. In addition, 28 U.S.C. § 1338(a) provides that the "district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to . . . trademarks." Further, because Plaintiff's state law claims are inextricably intertwined with its federal trademark infringement claim, this Court exercises

---

[6] Venue is proper because, while using Plaintiff's name and similar mark, Defendants provide commercial and residential roofing services within the boundaries of the Eastern District of Idaho. Therefore, "a substantial part of the events or omissions giving rise to" Plaintiff's claims occurred in this District. 28 U.S.C. § 1391(b)(2).

supplemental jurisdiction over Plaintiff's remaining state law claims pursuant to 28 U.S.C.

§ 1367(a).[7]

## C. Merits

The Court finds the factors set forth in *Eitel*, 782 F.2d at 1471–72 (hereinafter "*Eitel*

factors") weigh in favor of granting Plaintiff's Motion for Default Judgment.

### 1. Prejudice to Plaintiff

First, Plaintiff would suffer prejudice if the Court does not enter a default judgment

because Plaintiff would be denied the right to a judicial resolution of its claims. *Id*. Because

Defendants have refused to stop using Plaintiff's name and similar trademark, and also failed

to respond to Plaintiff's Complaint, the only recourse Plaintiff has is through this litigation.

Since denying Plaintiff's Motion for Default Judgment would leave Plaintiff "without

recourse for recovery," the first *Eitel* factor weighs in favor of a default judgment. *PepsiCo,*

*Inc.*, 238 F. Supp. 2d at 1177; *Blumenthal Distrib., Inc. v. Comoch, Inc.*, 652 F. Supp. 3d

1117, 1127 (C.D. Cal. 2023).

### 2. Merits of Claim and Sufficiency of Complaint

The Court next considers the merits of Plaintiff's claims and the sufficiency of

Plaintiff's Complaint. *Eitel*, 782 F.2d at 1471. "Under the *Eitel* analysis, the merits of

plaintiff's substantive claims and the sufficiency of the complaint are often analyzed

---

[7] The Court has personal jurisdiction over both Defendants because Defendant Glen Smith resides, and operates Smith Roofing LLC, in Idaho, and Defendant Smith Roofing LLC is an Idaho entity existing pursuant to the laws of Idaho, with its principal place of business in Idaho. Dkt. 1, ¶¶ 2–3; *Milliken v. Meyer*, 311 U.S. 457, 462 (1940) (explaining "[d]omicile in the state is alone sufficient" to establish personal jurisdiction); Idaho Code § 5-514 (enabling Idaho courts to exercise personal jurisdiction over any person or company engaged in the "transaction of any business within this state").

together." *Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1048 (N.D. Cal. 2010). Given Defendants' failure to ever respond to Plaintiff's Complaint, the allegations in Plaintiff's Complaint are deemed admitted. Fed. R. Civ. Proc. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."); *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) ("The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.").

Having reviewed Plaintiff's Complaint, the Court finds Plaintiff sufficiently states four claims: trademark infringement under the Lanham Act, common law trademark infringement, common law unfair competition, and unfair competition pursuant to Idaho Code section 48-603.[8] *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978) (explaining the second and third *Eitel* factors—involving the substantive merits of plaintiff's claim and the sufficiency of the complaint—require that plaintiffs' allegations "state a claim on which the [plaintiff] may recover").

a. Trademark Claims

Plaintiff brings its trademark infringement claim under Section 43(a) of the Lanham Act. 15 U.S.C. § 1125(a). This provision of the Lanham Act makes actionable the deceptive and misleading use in commerce of "any word, term, name, symbol, or device, or any combination thereof" in connection with any goods or services. 15 U.S.C. § 1125(a)(1). The

---

[8] Because Plaintiff does not give more than passing reference to its claims for unjust enrichment or tortious interference with prospective economic advantage in its Motion for Default Judgment, and because, as explained below, the Court finds Plaintiff's Complaint does not adequately state such claims, the Court enters default judgment solely with respect to Plaintiffs' trademark infringement and unfair competition claims.

Ninth Circuit "has consistently held that state common law claims of unfair competition . . . are substantially congruent to claims under the Lanham Act." *Cleary v. News Corp.*, 30 F.3d 1255, 1262–63 (9th Cir. 1994) (cleaned up); *M2 Software, Inc. v. Madacy Entm't, Corp.*, 421 F.3d 1073, 1080 n. 5 (9th Cir. 2005) (explaining the same standard—likelihood of confusion—applies to claims of trademark infringement under federal, state, and common law, as well as to common law and state statutory unfair competition claims); *see also Rise Basketball Skill Dev., LLC v. K Mart Corp.*, 2017 WL 2775030, at *3 (N.D. Cal. June 27, 2017) ("[A] common law unfair competition claim for trademark exploitation is analogous to a Lanham Act claim and may be analyzed under the same standard."). The Court, accordingly, jointly assesses Plaintiff's claims for trademark infringement under the Lanham Act, common law trademark infringement, common law unfair competition, and unfair competition pursuant to Idaho Code Section 48-603.[9] *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1079 (C.D. Cal. 2012).

To establish a claim for trademark infringement under section 43(a) of the Lanham Act, Plaintiff must show: (1) it has a valid, protectable trademark; and (2) Defendants' use of the mark is likely to cause confusion. *Applied Info. Sciences Corp. v. eBay, Inc.*, 511 F.3d 966, 969 (9th Cir. 2007). On July 5, 2023, Plaintiff registered with the United States Patent and Trademark Office ("USPTO") for trademark protection of the name "Smith Roofing" and mark "Smith Roofing" over a stylized roofline drawing.[10] Registration with the PTO

---

[9] Although known as the "Idaho Consumer Protection Act," Idaho Code Section 48-603 prohibits a defendant's unauthorized use of a plaintiff's tradename or trademark. *J.C. Penney Co. v. Parrish Co.*, 339 F. Supp. 726, 727 (D. Idaho 1972).

[10] This information was obtained from the PTO's trademark search tool. https://tmsearch.uspto.gov/search/search-results. The Court takes judicial notice of information available

constitute prima facie evidence of validity. *Id*. at 970.

Moreover, Section 43(a) of the Lanham Act protects against infringement of both unregistered and registered marks. *GoTo.com. Inc. v. Walt Disney Co*., 202 F.3d 1199, 1204 n. 4 (9th Cir. 2000) (citing *Kendall-Jackson Winder, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1046 (9th Cir. 1998)). "The first to use a mark is deemed the 'senior' user and has the right to enjoin 'junior' users from using confusingly similar marks in the same industry and market or within the senior user's natural zone of expansion." *Brookfield Communications, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1047 (9th Cir. 1999) (cleaned up).

For over 50-years, Plaintiff has utilized, traded on, and developed goodwill around the name "Smith Roofing" in Southeast Idaho and Western Wyoming. Dkt. 1, ¶¶ 6–10. From the early 1970s to the present, Plaintiff and its predecessor have consistently used the tradenames "Smith Roofing" and "Smith Roofing Company." *Id*., ¶ 8. In 1997, Plaintiff registered the assumed business name "Smith Roofing Company." *Id*., ¶ 7. For at least a decade, Plaintiff has also utilized, traded on, and developed good will around a mark featuring the words "Smith Roofing" over a stylized roofline drawing. *Id*., ¶¶ 8–10. Plaintiff has become widely known for its excellent customer service and quality of workmanship to the roofing trade in the Southeast Idaho and Western Wyoming communities. *Id*., ¶ 10.

On or about December 22, 2021, after Plaintiff had been in business for more than

---

on this government website, and accordingly, of Plaintiff's trademark registration status. *Autodesk, Inc. v. Dassault Sys. SolidWorks Corp.*, 2008 WL 6742224, at *2 n.1 (N.D. Cal. Dec. 18, 2008) (taking judicial notice of trademark registrations and applications publicly available on the USPTO website). *Daniels–Hall v. National Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010) (taking judicial notice of information on the websites of two school districts because they were government entities); *U.S. ex rel. Modglin v. DJO Glob. Inc*., 48 F. Supp. 3d 1362, 1381–82 (C.D. Cal. 2014) (finding the court could take judicial notice of documents from the Food and Drug Administration's website).

50-years, and registered under the name "Smith Roofing Company" for nearly 25-years, Defendants started trading on Plaintiff's reputation by not only doing business as "Smith Roofing," but also by utilizing a confusingly similar mark consisting of the words "Smith Roofing" over a stylized roofline drawing. *Id*., ¶¶ 6–7, 11–12. Given Plaintiff's decades long use before that of Defendants, Plaintiff is the senior user of both the name "Smith Roofing," and of the mark "Smith Roofing" over a stylized roofline drawing. 15 U.S.C. § 1057(c). Thus, in addition to its registration with the PTO, Plaintiff is the senior user of the "Smith Roofing" name and mark. In short, Plaintiff has adequately alleged it has a valid, protectable interest in the Smith Roofing name and mark.

The second element of a trademark infringement claim is "the defendant's use of the same or similar mark would create a likelihood of consumer confusion."[11] *Murray v. Cable Nat'l Broad. Co*., 86 F.3d 858, 860 (9th Cir. 1996). Where, as here, the services offered by the alleged infringer compete with those offered by the trademark owner, infringement usually will be found if the marks are sufficiently similar that confusion can be expected. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979) ("*Sleekcraft*"), *abrogated in part on other grounds by Mattel, Inc. v. Walking Mountain Prods*., 353 F.3d 792, 810 n. 19 (9th Cir. 2003)).

Like Plaintiff, Defendants offer residential, commercial, and new construction roofing services in Southeast Idaho and Western Wyoming. Dkt. 1, ¶¶ 9, 14. Defendants trade on Plaintiff's good name and reputation by providing the same services, in the same

---

[11] The test for common law and statutory unfair competition claims is also whether a likelihood of confusion exists. *Walter v. Mattel, Inc*., 210 F.3d 1108, 1111 (9th Cir. 2000) (citations omitted).

communities, as Plaintiff, while also using both the name "Smith Roofing," and a confusingly similar mark consisting of the words "Smith Roofing" over a stylized roofline drawing. *Id*. ¶¶ 11–12. Defendants have also established multiple separate internet sites, including www.smithroofs.com, www.smithroofs.net, and www.smithroofingid.com, each of which relies upon Plaintiff's trade name "Smith Roofing," in an effort to create confusion as to the source within the marketplace. *Id*., ¶ 13.

As a result of Defendants' conduct, Plaintiff contends it has suffered reputational injury and has also experienced actual marketplace confusion. *Id*., ¶¶ 20–21. Specifically, Plaintiff has received telephone calls from customers complaining about services performed and/or not performed in a timely matter by Defendants. *Id.* at 20. Marketplace confusion has also resulted in at least one check, in the sum of $83,000.00 owed to Plaintiff, to be sent to Defendants. *Id.* at 21. "Evidence that use of the two marks has already led to confusion is persuasive proof that future confusion is likely." *Sleekcraft*, 599 F.2d at 352.

In sum, Plaintiff has sufficiently alleged it has a valid interest in the "Smith Roofing" name and mark, as well as both a likelihood of confusion, and actual marketplace confusion, as a result of Defendant's infringement. The Court thus finds Plaintiff states claims for trademark infringement under the Lanham Act, common law trademark infringement, common law unfair competition, and unfair competition pursuant to Idaho Code section 48-603.

### b. Unjust Enrichment

District Courts have held that an "unjust enrichment claim that restates a trademark infringement claim, without alleging any quasi-contractual relationship, fails as a matter of

law." *Upper Deck Co. v. Flores*, 569 F. Supp. 3d 1050, 1071–72 (S.D. Cal. 2021) (quoting *Gearsource Holdings, LLC v. Google LLC*, 2020 WL 3833258, at *13 (N.D. Cal. Jul. 8, 2020)); *Sugarfina, Inc. v. Sweet Pete's LLC*, 2017 WL 4271133, at *6 (C.D. Cal. Sept. 25, 2017) (dismissing unjust enrichment claim where plaintiff failed to allege any quasi-contract between the parties and plaintiff's unjust enrichment allegations were "inextricably intertwined" with plaintiff's trademark claims and did not "give rise to a separate theory of quasi-contract") (quoting *Purcell v. Spokeo, Inc.*, 2014 WL 4187157, at *6 (C.D. Cal. Aug. 25, 2014)).

Plaintiff's Complaint does not allege a quasi-contractual relationship, and thus fails to state a claim for unjust enrichment. However, because Plaintiff has adequately alleged its various trademark infringement and unfair competition claims, the inadequacy of Plaintiff's unjust enrichment claim is not fatal to Plaintiff's Motion for Default Judgment. *Simple Design Ltd. v. Dairy-Queen Vision*, 2023 WL 2629153, at *5 (C.D. Cal. Jan. 10, 2023).

c.  <u>Tortious Interference with Prospective Economic Advantage</u>

To state a claim for tortious interference with a prospective economic advantage, a plaintiff must allege: "(1) the existence of a valid economic expectancy; (2) the defendant's knowledge of the expectancy; (3) an intentional interference inducing termination of the expectancy; (4) that the interference was wrongful by some measure beyond the fact of the interference itself"; and (5) harm resulting from the defendant's conduct. *Nelson-Ricks Cheese Co., Inc. v. Lakeview Cheese Co., LLC*, 331 F. Supp. 3d 1131, 1145 (D. Idaho 2018).

Although Plaintiff alleges it "had a valid economic expectancy in developing customer relationships and contracts with customers," Plaintiff has not identified a

prospective contractual relationship with *any* specific entity or individual. Dkt. 1, ¶ 57. As such, Plaintiff has not adequately stated a claim for tortious interference with a prospective economic advantage. *Rickards v. Canine Eye Registration Found., Inc.*, 704 F.2d 1449, 1456 (9th Cir. 1983) (explaining the plaintiff must plead the existence of a specific prospective economic relationship between the plaintiff and a third party to state a claim for tortious interference with a prospective economic advantage). Again, however, Plaintiff has sufficiently alleged its various trademark infringement and unfair competition claims. Thus, the inadequacy of Plaintiff's tortious interference claim does not warrant denying Plaintiff's Motion for Default Judgment. *Simple Design Ltd.*, 2023 WL 2629153, at *5.

In sum, the Court finds that the merits and sufficiency of Plaintiff's Lanham Act trademark infringement claim, and relatedly, Plaintiff's claims for common law trademark infringement, common law unfair competition, and unfair competition pursuant to Idaho Code section 48-603, weigh in favor of entering default judgment.

### 3. Damages

Under the fourth *Eitel* factor, the court must consider the amount of money at stake in relation to the seriousness of Defendants' conduct. *PepsiCo*, 238 F. Supp. 2d at 1176. Because Plaintiff requests only injunctive relief and does not seek monetary damages, this factor favors entering default judgment. *Id.*

### 4. Dispute Regarding Material Facts

Plaintiff filed a well-pleaded Complaint alleging the elements necessary to prevail on four of its claims. Subsequently, the Clerk of the Court entered default judgment against Defendants. Dkt. 10. Because all allegations in a well-pleaded Complaint, except those

relating to damages, are taken as true after a Clerk's Entry of Default, there is no possibility of dispute as to any material fact in this case. *Elektra Ent. Grp. Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005); *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177. The fifth *Eitel* factor thus favors granting a default judgment.

### 5. *Excusable Neglect*

Defendants were served with the Complaint on August 14, 2023. Dkt. 4. After their response deadline had passed, Defendants illustrated they had notice of the Complaint by requesting—through a non-licensed third party—an extension to answer the Complaint. Dkt. 5. Although the Court granted Defendants a 30-day extension, Defendants failed to ever answer the Complaint, or to otherwise participate in this case. Dkt. 7. Further, Plaintiff's Motion for Clerk's Entry of Default (Dkt. 8), the Court's Order Granting the Motion for Clerk's Entry of Default (Dkt. 9), the Clerk's Entry of Default (Dkt. 10), and Plaintiff's Motion for Default Judgment (Dkt. 11) were each mailed to Defendants at the address Defendants provided to the Court when requesting an extension of time to answer. Despite having ample notice of Plaintiff's claims, as well as notice of the possibility of default, Defendants have essentially ignored this action. In addition, more than six months have passed since the Complaint was served on Defendants, and four months have passed since the Clerk's Entry of Default.

Given the many notices to the Defendants, as well as the extended period of time that has passed since the Clerk's Entry of Default, the Court finds the possibility of excusable neglect is remote. *Elektra*, 226 F.R.D. at 393; *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177 (holding defendants could not establish excusable neglect where defendants contacted plaintiffs'

counsel after the complaint was served, but then failed to participate in the case). Thus, the sixth *Eitel* factor also supports default.

  6. *Policy Favoring Decision on the Merits*

  Finally, although cases "should be decided upon their merits whenever reasonably possible," *Eitel*, 782 F.2d at 1472, Defendants' failure to participate in this matter "makes a decision on the merits impractical if not impossible." *Elektra*, 226 F.R.D. at 393. Federal Rule of Civil Procedure 55(a) permits termination of a case without consideration of the merits where, as here, a defendant fails to plead or otherwise defend. Because Defendants have failed to defend this action in any way, the seventh *Eitel* factor does not preclude the Court from entering default judgment. *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177.

  In conclusion, the Court finds the first six *Eitel* factors weigh in favor default judgment, and the seventh *Eitel* factor weighs against default judgment but is not dispositive. *Blumenthal Distrib., Inc.*, 652 F. Supp. 3d at 1131. Accordingly, the Court grants Plaintiff's Motion for Default Judgment with respect to its federal and common law trademark infringement claims, and common law and state unfair competition claims.

## D. Relief Requested

  Plaintiff seeks a permanent injunction enjoining Defendants from all acts of trademark infringement and unfair competition. Dkt. 1; Dkt. 11-1. Plaintiff also requests $8,530.00 in attorney's fees and $622.00 in costs. Dkt. 11-2, at 1. The Court considers each form of requested relief in turn.

  1. *Injunctive Relief*

  The injunctive relief Plaintiff seeks is consistent with that requested in Plaintiff's

Complaint.[12] *Compare* Dkt. 1 *with* Dkt. 11-1. Specifically, Plaintiff requests an order permanently enjoining Defendants from: (1) using the name "Smith Roofing" in commerce; (2) utilizing any marks similar to Plaintiff's marks, and (3) using the domain names www.smithroofs.com, www.smithroofs.net, www.smithroofingid.com, or any other domain name that infringes or is confusingly similar to the trademarks of Plaintiff. Dkt. 1, at 9.

Under the Lanham Act, "the district court [has] the 'power to grant injunctions according to principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right' of the trademark owner." *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1137 (9th Cir. 2006) (quoting 15 U.S.C. § 1116(a)). Notably, "injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Century 21 Real Est. Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988).

As discussed above, Plaintiff has adequately stated its statutory and common law trademark infringement and unfair competition claims. To obtain a permanent injunction, Plaintiff must establish: (1) it has suffered irreparable injury; (2) remedies available at law,

---

[12] As noted, Federal Rule of Civil Procedure 54(c) requires that a "default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." "In enacting this provision, judicial and legislative authorities recognized that the defending party should be able to decide on the basis of the relief requested in the original pleading whether to expend the time, effort, and money necessary to defend the action." *Gray Ins. Co. v. Lectrfy, Inc*., 2014 WL 12689270, at *6 (C.D. Cal. Mar. 3, 2014) (citing 10 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2663 (3d ed. 1998)). While it would be fundamentally unfair to award a different type of relief, or a higher damage award, than that prayed for in a complaint, it does not prejudice a defaulting defendant to award *less* relief than that sought in the complaint. *Luxottica Grp., S.p.A. v. Eye Story, Inc*., 2020 WL 2404913, at *6 (C.D. Cal. May 11, 2020) (entering permanent injunction upon defendant's default where such relief was within the broader scope of relief sought in the pleadings). Because Plaintiff's Complaint requested injunctive relief, attorney's fees, and costs, the Court finds Federal Rule of Civil Procedure 54(c) is satisfied even though Plaintiff has apparently abandoned the monetary damages sought in its Complaint.

such as monetary damages, are inadequate to compensate Plaintiff for that injury; (3) the balance of hardship between Plaintiff and Defendants warrants injunctive relief; and (4) "the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

The Court finds Plaintiff has demonstrated that it will suffer irreparable injury in the absence of an injunction because, under the Lanham Act, a plaintiff seeking an injunction "shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this subsection in the case of a motion for a permanent injunction[.]" 15 U.S.C. § 1116(a). By failing to participate in this case, Defendants have not even attempted to rebut this presumption. Further, in an action for trademark infringement, "once the plaintiff establishes a likelihood of confusion, it is ordinarily presumed that the plaintiff will suffer irreparable harm if injunctive relief is not granted." *Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 612 n.3 (9th Cir. 1989). Plaintiff's Complaint demonstrates not only a likelihood of confusion, but also actual consumer confusion caused by Defendants' use of Plaintiff's name and similar mark. Dkt. 1, ¶¶ 17–21. Plaintiff has thus established it will suffer irreparable harm if the Court does not award injunctive relief.

Plaintiff has shown other legal remedies would be inadequate because Plaintiff alleges it has suffered reputational damage and lost profits, and will continue to suffer such injury, if Defendants' infringement is not enjoined. Dkt. 1, ¶¶ 18–23. "Damage to reputation and loss of customers are intangible harms not adequately compensable through monetary damages." *Car-Freshner Corp. v. Valio, LLC*, 2016 WL 7246073, at *8 (D. Nev. Dec. 15, 2016). As such, other legal remedies would be inadequate.

The balance of hardships also weighs in favor of an injunction because Plaintiff will continue to lose profits and goodwill without an injunction, while an injunction will only proscribe Defendants' infringing activities. *Wecosign, Inc.*, 845 F. Supp. 2d at 1084. Finally, an injunction is in the public interest because "[t]he public has an interest in avoiding confusion between two companies' products." *Internet Specialties West, Inc. v. Milon-DiGiorgio Enters., Inc.*, 559 F.3d 985, 993 n. 5 (9th Cir. 2009); *AT&T Corp.v. Vision One Sec. Sys.*, 1995 WL 476251, at *7 (S.D. Cal. Jul. 27, 1995) ("Where defendant's concurrent use of plaintiff's trademark without authorization is likely to cause confusion, the public interest is damaged by the defendant's use."). Because Defendants are using Plaintiff's name and similar trademark, while also offering the same services in the same communities, the public is likely to be confused—and in fact has been confused—by Defendants' conduct. The public interest consequently weighs in favor of an injunction.

In sum, Plaintiff has established it will suffer irreparable injury if Defendants' infringement is not enjoined and that other remedies are insufficient to compensate Plaintiff for such injury. The balance of harm, and the public's interest, also each weigh in favor of an injunction. Accordingly, the Court grants Plaintiff's request for a permanent injunction.

### 2. Attorney's Fees

The Lanham Act authorizes an award of attorney fees to the prevailing party in "exceptional cases." 15 U.S.C. § 1117(a). "A case is exceptional if the defendant has acted in bad faith or with willful and deliberate conduct." *Discovery Commc'ns, Inc. v. Animal Planet, Inc.*, 172 F. Supp. 2d 1282, 1291 (C.D. Cal. 2001). Here, Defendants have continued to use Plaintiff's trade name, as well as a confusingly similar trademark, despite Plaintiff's

cease and desist letter, Complaint, and Motion for Default Judgment. An award of attorney's fees is appropriate under such circumstances. *Id*. at 1292 (finding plaintiff was entitled to attorney's fees where defendant chose to use plaintiff's mark even though defendant had actual notice of plaintiff's rights thereto); *E. & J. Gallo Winery v. Consorizio del Gallo Nero*, 782 F. Supp. 472, 474–76 (N.D. Cal. 1992) (awarding attorney's fees to plaintiff after defendant repeatedly ignored warnings to stop using plaintiff's mark). Further, a case may be considered exceptional where, as here, "the defendants disregard the proceedings and do not appear." *Discovery Commc'ns, Inc.*, 172 F. Supp. 2d at 1292 (citing *Taylor Made Golf Co., Inc. v. Carsten Sports, Ltd*., 175 F.R.D. 658, 663 (S.D. Cal. 1997)). Defendants' failure to participate in this case and willful use of Plaintiff's name and mark constitute exceptional circumstances justifying an award of attorney's fees.

Having found Plaintiff is entitled to attorney's fees, the Court turns next to Plaintiff's request for $8,530.00 in fees. Courts within the Ninth Circuit apply the "lodestar" approach to determine appropriate fee awards. *Vogel v. Harbor Plaza Ctr., LLC*, 893 F.3d 1152, 1158 (9th Cir. 2018). The lodestar amount is calculated by multiplying "the number of hours *reasonably* expended on the litigation by a *reasonable* hourly rate." *Id*. at 1160 (emphasis in original) (quoting *Costa v. Comm'r of Soc. Sec. Admin*., 690 F.3d 1132, 1135 (9th Cir. 2012)). [13] "The party seeking fees bears the burden of documenting the hours expended in the litigation and must submit evidence supporting those hours and the rates claimed." *Welch*

---

[13] A court may adjust the lodestar figure based on a number of additional factors not subsumed in the initial lodestar calculation. *Kerr v. Screen Extras Guild, Inc*., 526 F.2d 67, 70 (9th Cir. 1975), *abrogated on other grounds by City of Burlington v. Dague*, 505 U.S. 557 (1992). Since Plaintiff does not seek an adjustment to the lodestar calculation, the Court does not address such factors here.

*v. Metro Life Ins. Co.*, 480 F.3d 942, 945–46 (9th Cir. 2007) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

a. Hours Expended

A fee applicant must submit appropriate and accurate time records to support its claim of fees. *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986). Claimed hours "may be reduced by the court where documentation of the hours is inadequate, if the case was overstaffed and hours are duplicated, [or] if the hours expended are deemed excessive or otherwise unnecessary." *Id.* (cleaned up).

In conjunction with its Motion for Default Judgment, Plaintiff submitted detailed time records for 20.9 hours of attorney time, and 8.1 hours of paralegal time, resulting in a total of 29 hours spent litigating this case.[14] Dkt. 11-2, Ex. A. Having carefully reviewed such records, the Court finds this matter was appropriately staffed, and that the hours expended were not duplicative, excessive, or unnecessary. The Court accordingly finds a total of 29 hours was a reasonable amount of time to expend on this case.

b. Hourly Rates Claimed

Although Plaintiff does not specifically so state, the relevant community for assessing Plaintiff's requested rates is the Eastern District of Idaho, where this Court sits.[15] *Gates v. Rowland*, 39 F.3d 1429, 1449, 1405 (9th Cir. 1994) ("Normally, the relevant legal community for determining the prevailing market rates for attorneys' fees is the community

---

[14] Plaintiff's records detail time Plaintiff's attorney, Jared Wayne Allen, and another unidentified timekeeper, "SB," spent on this matter. Without any information about "SB" other than the specific tasks s/he performed, the Court assumes "SB" is a paralegal.

[15] Plaintiff's counsel's office is also located in Eastern District of Idaho, specifically in Idaho Falls.

in which the forum is situated.") (cleaned up); *Vargas v. Howell*, 949 F.3d 1188, 1194 (9th Cir. 2020) (explaining reasonable hourly rates "are to be calculated according to the prevailing market rates in the relevant community").

Parties seeking fees have the "burden of producing evidence that their requested fees are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.* at 1199 (cleaned up). Plaintiff seeks an hourly rate of $350.00 for its attorney, and $150.00 for its paralegal. However, Plaintiff's counsel did not submit his own declaration, declarations of other attorneys, or any other information to establish Plaintiff's requested rates are commensurate with those prevailing in eastern Idaho for lawyers with comparable experience. In fact, Plaintiff's counsel has not outlined even his own experience, or that of SB, in requesting fees. *See* Dkt. 11-2. In the absence of such information, the Court relies upon its own experience to determine the prevailing market rate. *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011) (noting in evaluating a requested rate, "judges are justified in relying on their own knowledge of customary rates and their experience concerning reasonable and proper fees").

According to his firm's website, Plaintiff's counsel is a partner with litigation and business experience in a small regional firm located in Idaho Falls, Idaho. *See* https://www.beardstclair.com/attorneys/jared-w-allen. Although the Court lacks information regarding Mr. Allen's experience, another judge of this District determined $300.00 per hour was a reasonable hourly rate for a partner with significant litigation experience in a small regional firm located in Idaho Falls. *United States ex rel. Jacobs v. CDS, P.A.*, 2018 WL 6268201, at *2–3 (D. Idaho Nov. 30, 2018). Given the time that has elapsed since *Jacobs*

was decided, the Court finds $325.00 is an appropriate hourly rate for Plaintiff's counsel. The Court's adjusted rate for Mr. Allen's fee results in a reduction of $522.50 to Plaintiff's fee request.

The Court also lacks information about "SB," the other timekeeper who worked on Plaintiff's case. As noted, in the absence of any information about SB, the Court assumes s/he is a paralegal. Because Plaintiff has neither outlined SB's specific experience, nor submitted any evidence regarding the prevailing market rate for paralegals with comparable experience, the Court finds $120.00 an hour is reasonable and is in line with rates the Court has previously awarded for paralegals who, like SB, work for small regional firms in Idaho. *Gonzales on behalf of A.G. v. Burley High Sch.*, 2020 WL 7047747, at *7 (D. Idaho Nov. 30, 2020); *Eccles v. City of Lewiston Lib. Bd. of Trustees*, 2021 WL 277196, at *5 (D. Idaho Jan. 27, 2021). The Court's adjusted rate for SB's hourly fee results in a reduction of $243.00 to Plaintiff's fee request.

Based on the record and the Court's experience, the Court finds that a fee award of $7,764.50 is reasonable.[16] *Vogel*, 893 F.3d at 1160. Accordingly, the Court awards Plaintiff $7,764.50 in attorney's fees.

### 3. Costs

Pursuant to Federal Rule of Civil Procedure 54(d)(1) and District of Idaho Local Civil Rule 54.1, the Court may award costs to Plaintiff as the prevailing party. Costs may include, *inter alia*, fees for printing, fees of the clerk, and fees for making copies of any materials

---

[16] Mr. Allen's 20.9 hours at $325.00 per hour ($6,792.50), plus SB's 8.1 hours at $120.00 per hour ($972.00), results in a total of $7,764.50 in fees.

obtained for use in the case. 28 U.S.C. § 1920. Plaintiff seeks costs of $622.00 for fees related to filing, service, and legal research. Dkt. 11-2. The Court finds such costs are permissible under 28 U.S.C. § 1920, and awards Plaintiff $622.00 in costs.

## V. CONCLUSION

The Court finds the *Eitel* factors weigh in favor of entering judgment in favor of Plaintiff on its claims for trademark infringement under Section 43 of the Lanham Act, common law trademark infringement, common law unfair competition, and unfair competition under Idaho Code § 48-603. Further, Plaintiff is entitled to a permanent injunction enjoining Defendants from using Plaintiff's name and trademark, or any other names or marks similar thereto, because the likelihood of irreparable harm, inadequacy of other remedies, balance of hardships, and public interest each weigh in favor of such relief. Finally, the Court finds Plaintiff is entitled to a total award of $8,386.50 in fees and costs.

## VI. ORDER

It is **HEREBY ORDERED**:

1. Plaintiff's Motion for Default Judgment (Dkt. 11) is **GRANTED**. The Court will enter judgment on Plaintiff's claims for trademark infringement under Section 43(a) of the Lanham Act, common law trademark infringement, common law unfair competition, and unfair competition under Idaho Code § 48-603.

2. The Court awards Plaintiff the following relief:

   a. Defendants are permanently enjoined from the activities enumerated in the Court's Default Judgment;

   b. Attorney's fees in the amount of $7,764.50;

    c.  Costs is the amount of $622.00.

3.  The Court will enter a separate judgment pursuant to Federal Rule of Civil Procedure 58(a).

DATED: March 26, 2024

David C. Nye
Chief U.S. District Court Judge